## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| OMAR BUTCHER | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | CIVIL ACTION |
| | ) | File No. _____ |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| CABLE NEWS NETWORK, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff Omar Butcher files this Complaint against Defendant Cable News

Network, Inc. ("Defendant") for violations of the Civil Rights Act of 1866,

42 U.S.C. § 1981 ("§ 1981"); and Title VII of the Civil Rights Act of 1964 as

amended by the Civil Rights Act of 1991, 42 U.S.C. § 2000e *et seq.* ("Title VII").

## PARTIES

### 1.

At all times relevant to this action, Defendant employed Mr. Butcher.

### 2.

Mr. Butcher submits himself to the jurisdiction of this Court.

### 3.

Defendant is a corporation organized under the laws of the state of Delaware,

is registered to do business in Georgia, and is subject to the jurisdiction and venue of this Court.

4.

Defendant may be served with process by delivering a copy of Summons and Complaint to CT Corporation System, its registered agent, at 1201 Peachtree Street NE, Atlanta, GA, 30361.

5.

Defendant is an "employer" as defined by Title VII.

## ADMINSTRATIVE

6.

Mr. Butcher timely filed a charge for Race and Religious Discrimination with the Equal Employment Opportunity Commission.

7.

Mr. Butcher filed this lawsuit within 90 days of the receipt of his Notice of Right to Sue.

## JURISDICTION AND VENUE

8.

Jurisdiction of this Court is proper pursuant to 42 U.S.C. §§ 1981, 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1343 (civil rights).

9.

Venue is proper in this district and division pursuant to 28 U.S.C. § 1391(b)(1) because Defendant resides within the Northern District of Georgia.

10.

Venue is also proper in this district and division pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events and omissions giving rise to this Complaint occurred within the Northern District of Georgia.

## STATEMENT OF FACTS

11.

Mr. Butcher began working for Defendant in 2010.

12.

Mr. Butcher is an African American male and is a devout Christian.

13.

In 2011, Mr. Butcher was working for Defendant as an Associate Producer but was continuing to look for opportunities to make the transition to a writer/producer position with Defendant.

14.

Mr. Butcher's writing ability drew praise from parties at Defendant who were outside his chain of command.

3

15.

For example, these employees praised Mr. Butcher's writing as "strong" and noted he "will be a great asset to CNN as a writer."

16.

Mr. Butcher also successfully completed a highly-esteemed writing course.

17.

Despite Mr. Butcher's ability, the other Associate Producer on the show, a white male with less experience, was given more access to writing segments and, just a few months later, received a promotion that Mr. Butcher had applied for.

18.

Mr. Butcher was not even interviewed for this position.

19.

In 2012, Mr. Butcher joined Inside Pitch, a program of Defendant's where employees can pitch, produce and write their own stories.

20.

Mr. Butcher's work was highlighted and featured on this segment and received praise from seasoned veterans regarding its excellence.

21.

Despite the obviously high quality of his work, Mr. Butcher applied for three

writer/producer jobs in 2012 for which he was qualified and all three positions were awarded to white individuals.  Mr. Butcher did not even receive an interview.

22.

Mr. Butcher contacted Human Resources Manager Ellen Russ and asked her about the process for internal candidates.  She listed a number of items that should be part of process, none of which had been disclosed to Mr. Butcher during his application process.

23.

Ms. Russ never adequately addressed Mr. Butcher's concerns about the hiring process.

24.

On information and belief, Mr. Butcher applied for at least 5 or 6 positions within Defendant's organization for which he received no interviews.

25.

In 2013, Mr. Butcher applied for another writer/producer job which Defendant awarded to a white employee with no relevant writing experience and whom Mr. Butcher had actually trained.

26.

In August 2013, Mr. Butcher again raised his concerns to Human Resources

and noted that he had asked time and time again without any success for opportunities to train.

27.

Defendant again never adequately addressed Mr. Butcher's concerns about the suspicious hiring and training process.

28.

Mr. Butcher came in on his days off to pursue writing and training opportunities.  Mr. Butcher had to come in on his days off because he was not given the paid training and opportunities to gain access to paid training his white counterparts received.

29.

A more senior individual had volunteered to work with Mr. Butcher on Mr. Butcher's days off.  But John Antonio, CNN's Vice President of Dayside Programming told Mr. Butcher to "stand down" on the training and to pursue it through "proper training protocols."

30.

Mr. Antonio did so despite the fact that Mr. Butcher told him he had spoken with Janelle Rodriguez, the Vice President of Programming, and she had encouraged him to set up his own training.

31.

Mr. Butcher continued to seek out paid training opportunities offered through Defendant's sponsored-programs like CNN Passport Program and was not given the opportunity to participate on two occasions after setting up the opportunity but not being allowed to pursue it by Ms. Rodriguez.

32.

Mr. Butcher most recently applied for an Associate Producer position for a show in Defendant's DC bureau. He did not get an interview for this lateral position either. He never received any acknowledgement in any way as an internal candidate in the form of an interview or writer's test.

33.

Mr. Butcher is a devout Christian and became increasingly troubled by certain of his team members' frequent use of profane language (especially language such as "Jesus Christ" and "God damn").

34.

In an effort to resolve the matter informally, Mr. Butcher sent an email to his team in which he stated that he was a Christian and asked that team members not "take the Lord's name in vain" in his presence.

35.

Even after Mr. Butcher raised his concerns as a Christian (a point he explicitly explained in the email) certain team members continued using profanity in front of Mr. Butcher.  On information and belief, some team members even increased their use of such language to further harass Mr. Butcher.

36.

In one meeting, the use of profane language was so pronounced that Mr. Butcher left the meeting in protest after his repeated requests that his colleagues refrain from using such language were ignored.

37.

Mr. Antonio confronted Mr. Butcher after the meeting and told Mr. Butcher there would be repercussions if Mr. Butcher walked out of another meeting.

38.

Mr. Butcher attempted to ask Mr. Antonio what was being done about his concerns about profane language but was told, "Just make sure you are at the meetings."

39.

In 2014, the "in" time for Mr. Butcher's show changed to 5:00 a.m.  The show's Executive Producer, however, took a team vote to come in at 5:30 a.m. instead of 5:00 a.m. Mr. Butcher filled out his time sheet as 5:30 a.m. to 1:00 p.m.,

the hours he worked.

40.

Defendant's office and time sheet coordinator, Toni Johnson, stated that Mr. Butcher needed 8 hours on his time sheet even if he did not work the 8 hours.  Mr. Butcher explained he did not work 8 hours but Ms. Johnson told him she could not submit the time sheet as it was. Mr. Butcher followed her instruction and placed his "in" time at 5:00am.

41.

On information and belief, Defendant's atmosphere was very informal concerning time sheets.

42.

Employees were frequently allowed to leave early when their work was finished.

43.

There were numerous instances of tardiness on the team including a number of white team members, many of whom frequently arrived at the same time as Mr. Butcher.  Yet, on information and belief, Mr. Butcher was singled out for a Human Resources "investigation."

44.

In 2014, Defendant's Human Resources representative Alicia Saunders and Mr. Butcher's Executive Producer, Christina Ginn, summoned Mr. Butcher to a meeting to address his alleged attendance issues but came with documentation showing only his "in" times.

45.

Mr. Butcher suggested HR pull his out times to document that he also stayed later working on posting content online and researching stories for the next day to match times when he was delayed. On information and belief, Mr. Butcher's out times showed him leaving after 1:30 on numerous occasions.

46.

In October 2014, the Vice President of Programming singled out Mr. Butcher in front of an HR representative, telling him "You better watch out."

47.

Mr. Butcher told the HR representative – who had heard the threat – that he had just been threatened.

48.

Defendant took no action in response.

49.

In April 2015, Mr. Butcher sent an email to Defendant's Human Resources department in which he expressed concerns about ongoing use of profane language, a co-worker's "obvious and negative sounding comment about the increase in African American voices on our air," and stated in part "I feel that CNN has a larger problem and is not taking the necessary steps to ensure that everyone is protected and comfortable in the workplace without the fear of retaliation, being ostracized, ignored, and privately rebuked by their peers for bringing to light their grievances and concerns."

50.

In March 2015, Mr. Butcher again complained to HR about, among other things, "the hostile and negative climate" he was experiencing and his concerns about "internal retaliation" for going to HR.

51.

Again, Defendant did not adequately address Mr. Butcher's concerns.

52.

In late June 2015, Mr. Butcher left work with two other white co-workers.

53.

The next morning in a meeting, Mr. Butcher's Senior Producer singled out Mr. Butcher for leaving and not attending the previous afternoon meeting. His white colleagues, who also did not attend the meeting, were not mentioned.

54.

Mr. Butcher's Executive Producer sent an email stating that everyone was required to attend the post-show meeting.

55.

Mr. Butcher forwarded the email to HR and raised his concern about being "targeted" in the morning meeting when other, white employees had excluded themselves from meetings without being "called out" as Mr. Butcher had.

56.

Mr. Butcher specifically stated that such conduct "appears discriminatory in nature." He also voiced, yet again, his concerns about being excluded from opportunities because of race or religion.

57.

Defendant again never adequately addressed Mr. Butcher's concerns about discrimination.

58.

In July 2015, CNN anchor Ashley Banfield asked on the air in a segment regarding violence in the African American community:  "Have we lost a generation?" and whether "there is an entire generation out that there cannot be changed, that cannot be reached, they just have to age and die?"

59.

Mr. Butcher was extremely troubled by Ms. Banfield's racially insensitive remarks and sent her a private email in which he explained his concern and noted that she did not make similar queries regarding letting a generation die in a previous segment addressing young white males who murder.

60.

Ms. Banfield responded and questioned whether Mr. Butcher was suggesting she was "a racist" and that she would "take [it] up with our bosses."  In fact, Ms. Banfield copied senior management on the email rather than respond in the one on one fashion that Mr. Butcher had emailed her.

61.

When Mr. Butcher attempted to post a link to the Banfield segment, as he did for all segments of the show, he discovered Ms. Ginn had removed that segment.

62.

Mr. Antonio initially praised Mr. Butcher for speaking up and said he had every right to challenge anyone on the team or in the building if he felt that something said was improper.

63.

That same day, however, Mr. Butcher was summoned into a meeting with Mr. Antonio and Human Resources representative Monique Martin.

64.

Defendant demanded that Mr. Butcher explain his email and told him to go home for the remainder of his shift.

65.

Mr. Antonio told Mr. Butcher his email to Ms. Banfield was "inappropriate and confrontational" and that Ms. Banfield was upset by it.

66.

When Mr. Butcher stated that he wanted to stay and do his job on the show he was told said if he refused to leave it would be considered an act of "insubordination."

67.

Later that day Mr. Antonio called Mr. Butcher at home to tell him not to come to work because "things" had to be discussed.

68.

On July 8, 2015, only 1 day after Mr. Butcher engaged in protected conduct by opposing discriminatory conduct and raising his concerns about discrimination to Human Resources, Defendant terminated Mr. Butcher's employment.

69.

Defendant terminated Mr. Butcher less than 1 month after Mr. Butcher had raised his concerns about discriminatory application of the attendance policy and only 1 day after the incident with Ms. Banfield in which Mr. Butcher opposed racial discrimination and again raised concerns about racial discrimination and bias.

## COUNT I
## Race Discrimination in Violation of
## Title VII of The Civil Rights Act of 1964, as Amended

70.

Mr. Butcher incorporates by reference the preceding Paragraphs as if fully restated herein.

71.

Mr. Butcher is African-American.

72.

Mr. Butcher is an "employee" as defined by Title VII, 42 U.S.C. § 2000e *et seq.*

73.

Defendant is an "employer" as defined by Title VII, 42 U.S.C. § 2000e *et seq.*

74.

Having worked in his position previously, Mr. Butcher was qualified for the position.

75.

Defendant discriminated against Mr. Butcher in the terms and conditions of his employment when it failed to hire or even interview Mr. Butcher for positions

to which he applied, singled him out for an "investigation," and when it terminated Mr. Butcher's employment.

76.

Defendant undertook unlawful conduct intentionally and maliciously with respect to Mr. Butcher and his federally protected rights, entitling Mr. Butcher to recover punitive damages against Defendant.

77.

Additionally, or in the alternative, Defendant undertook its unlawful conduct recklessly with respect to Mr. Butcher and his federally protected rights, entitling Mr. Butcher to recover punitive damages against Defendant.

78.

As a direct and proximate result of the Defendant's actions, Mr. Butcher has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

79.

Mr. Butcher is entitled to an award of back pay and benefits, compensatory damages, attorney's fees, and all other appropriate damages, remedies, and other relief available under Title VII and all federal statutes providing remedies for violations of Title VII.

## COUNT II
## Race Discrimination in Violation of 42 U.S.C. § 1981

80.

Mr. Butcher incorporates by reference the preceding Paragraphs as if fully restated herein.

81.

Defendant is in violation of 42 U.S.C. § 1981.

82.

The employment relationship between Mr. Butcher and Defendant gives rise to a cause of action for race discrimination 42 U.S.C. § 1981.

83.

Mr. Butcher is African American.

84.

Having worked in his position previously, Mr. Butcher was qualified for the position.

85.

Defendant discriminated against Mr. Butcher in the terms and conditions of his employment when it denied him promotions for which he was qualified, singled him out for an "investigation," and when it terminated Mr. Butcher's employment.

18

86.

As a direct and proximate result of the Defendant's actions, Mr. Butcher has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

87.

Pursuant to 42 U.S.C. § 1981, Mr. Butcher is entitled to declaratory relief, injunctive relief, compensatory damages and punitive damages, attorney's fees, and all other appropriate damages, remedies, and other relief against Defendant because Defendant discriminated against Plaintiff on the basis of race in violation of clearly established law.

88.

Defendant undertook its unlawful conduct intentionally and maliciously with respect to Mr. Butcher and his federally protected rights, entitling Mr. Butcher to recover punitive damages against Defendant.

89.

Additionally, or in the alternative, Defendant undertook its unlawful conduct recklessly with respect to Mr. Butcher and his federally protected rights, entitling Mr. Butcher to recover punitive damages against Defendant.

90.

Defendants' actions damaged Mr. Butcher in an amount to be proven at trial.

## COUNT III
## Religious Discrimination in Violation of
## Title VII of The Civil Rights Act of 1964, as Amended

91.

Mr. Butcher incorporates by reference the preceding Paragraphs as if fully restated herein.

92.

Having worked in his position previously, Mr. Butcher was qualified for the position.

93.

Mr. Butcher is a devoted Christian and became increasingly troubled by certain of his team members' use of profane language (especially language such as "Jesus Christ" and "God damn").

94.

Mr. Butcher sent an email to his team in which he stated that he was a Christian and asked that team members not use such profane language in his presence.

95.

Even after Mr. Butcher raised his concerns as a Christian (a point he

explicitly explained in the email) the discriminatory conduct, of which Defendant was aware, continued.

96.

Defendant undertook unlawful conduct intentionally and maliciously with respect to Mr. Butcher and his federally protected rights, entitling Mr. Butcher to recover punitive damages against Defendant.

97.

Additionally, or in the alternative, Defendant undertook its unlawful conduct recklessly with respect to Mr. Butcher and his federally protected rights, entitling Mr. Butcher to recover punitive damages against Defendant.

98.

As a direct and proximate result of the Defendant's actions, Mr. Butcher has suffered damages including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

99.

Mr. Butcher is entitled to an award of back pay and benefits, compensatory damages, punitive damages, attorney's fees, and all other appropriate damages, remedies, and other relief available under Title VII and all federal statutes providing remedies for violations of Title VII.

## COUNT IV
## <u>Retaliation in Violation of Title VII</u>

100.

Mr. Butcher incorporates by reference the preceding paragraphs as if fully restated herein.

101.

Mr. Butcher engaged in protected activity by opposing and reporting discrimination with respect to Defendant's administration of the attendance policy, language that was offensive to him as a Christian, and Ms. Banfield's remarks.

102.

Defendant's actions in terminating Mr. Butcher because he engaged in protected activity constitute unlawful intentional retaliation in violation of Title VII of the Civil Rights Act, as amended.

103.

Defendant willfully and wantonly disregarded Mr. Butcher's rights and Defendant's retaliation against Mr. Butcher was undertaken in bad faith.

104.

The effect of Defendants' unlawful actions has been to deprive Mr. Butcher of a job, as well as income in the form of wages, health insurance, prospective retirement benefits, social security, and other benefits due to him because he

engaged in protected activity.

### 105.

As a result of Defendants' unlawful actions, Mr. Butcher has also suffered emotional distress, inconvenience, loss of income, humiliation, and other indignities.

## COUNT V
## Retaliation in Violation of Section 1981

### 106.

Mr. Butcher incorporates by reference the preceding paragraphs as if fully restated herein.

### 107.

Defendants' actions in terminating Mr. Butcher because he engaged in protected activity constitute unlawful intentional retaliation in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

### 108.

Defendant's actions were committed with reckless disregard for Mr. Butcher's right to be free from discriminatory treatment on account of his protected activity and in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981.

109.

Defendant's unlawful actions taken against Mr. Butcher have caused him to suffer both monetary and non-monetary damages.

110.

As a result of Defendants' unlawful actions, Mr. Butcher has also suffered emotional distress, inconvenience, loss of income, humiliation, and other indignities.

111.

Accordingly, Mr. Butcher is entitled to the equitable and monetary relief set forth in the following prayer for relief for Defendant's violation of his rights under the Civil Rights Act of 1866, 42 U.S.C. § 1981.

## **PRAYER FOR RELIEF**

WHEREFORE, Mr. Butcher demands a TRIAL BY JURY and requests the following relief:

a.    a declaratory judgment that Defendant violated Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e *et seq*., and 42 U.S.C. § 1981;

b.    a permanent injunction, prohibiting Defendant from engaging in unlawful employment practices in violation of Title VII or 42 U.S.C. § 1981;

c.      full back pay from the date of Mr. Butcher's termination, taking into account all raises to which he would have been entitled but for the unlawful termination, and all fringe and pension benefits of employment, with prejudgment interest thereon;

d.      reinstatement to Mr. Butcher's former position with Defendant at the same pay grade, or in the alternative, front pay to compensate Mr. Butcher for lost future wages, benefits and pension;

e.      compensatory damages in an amount to be determined by the enlightened conscience of the jury, for Mr. Butcher's emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

f.      punitive damages against Defendant;

g.      attorneys' fees and costs; and

h.      all other and further relief as this Court deems just and proper.

Respectfully submitted,

BUCKLEY BEAL, LLC

By:    s/ Edward D. Buckley
       edbuckley@buckleybeal.com
       Georgia Bar No. 092750
       Thomas J. Mew
       tmew@buckleybeal.com
       Georgia Bar No. 503447

Promenade, Suite 900
1230 Peachtree Street, NE
Atlanta, GA  30309
Telephone:  (404) 781-1100
Facsimile:  (404) 781-1101